ELIZABETH KERR, JUSTICE, dissenting.
Because the majority continues what I believe has become an ill-advised reliance on finding "ambiguity" when an oral sentencing conflicts outright with a verdict and judgment, I dissent from its disposition of Ette's second point.
If the trial court meant to include the fine at sentencing but simply forgot, it might in theory be a good idea to enforce the $10,000 fine at issue-found in the jury's verdict, in the judgment, and among the conditions of Ette's probation but not in the oral pronouncement of sentence-but forgetfulness is a mistake, not an ambiguity. Really, we cannot know if the fine's omission was inadvertent at all; the court might have wrongly thought that a fine need not be pronounced during sentencing because every other part of the record included the fine. That is a different sort of mistake, but it too is no ambiguity.
I would sustain Ette's appellate point arguing that because the trial court did not pronounce the $10,000 fine during sentencing as the law requires, Ette has no fine to pay.
Reading the verdict and the sentence
During the trial's punishment phase, the court read the verdict aloud-including the fine-and then pronounced Ette's sentence-without the fine:
THE COURT: Mr. Foreperson, we received a note. "The jury has ... reached a verdict." Have you reached a verdict on punishment?
FOREMAN: Yes, we have.
THE COURT: Is it a unanimous verdict?
FOREMAN: Yes, it is.
THE COURT: Hand the verdict to the bailiff, please.
Verdict form: We, the jury, having found the defendant, Eddie Offiong Ette, guilty of the offense of misapplication of fiduciary property as charged in the indictment, assess his punishment at confinement in the Correctional Institutions Division of the Texas Department *793 of Criminal Justice for 10 years and we do recommend that the imposition of his sentence be suspended and that he be placed on community supervision. In addition thereto, we, the jury, assess a fine of $10,000 and we do not recommend that such fine be suspended. Signed by the foreman of this jury.
Does either side wish the jury to be polled?
[PROSECUTOR]: No, Your Honor.
[DEFENSE COUNSEL]: No, Your Honor.
THE COURT: Defendant please rise.
In Cause No. 1363508D; State of Texas versus Eddie Offiong Ette. The jury, having found you guilty upon your plea of not guilty to the offense of misapplication of fiduciary property, and having assessed your punishment at 10 years' confinement in the penitentiary, and having recommended that your sentence be suspended, your sentence is hereby suspended and you will be placed on community supervision for a period of 10 years.
Terms and conditions of your supervision are set out in the Court's documents, which I will give you in a few minutes, and you are ordered by the Court to follow each and every one of those conditions. If you violate any one of the terms and conditions, your probation may be revoked and you have to serve a term of incarceration.
In addition to that, the Court will impose restitution in the amount of $350,000 as a condition of your probation.
Do you understand your sentence, Mr. Ette?
THE DEFENDANT: Yes, Your Honor.
The trial court's later-entered judgment tracked the jury verdict-but not the oral pronouncement of sentence-by including the $10,000 fine.
Mismatch between oral sentencing and the verdict and written judgment: ambiguity versus conflict
When a trial court orally pronounces a sentence that does not match the verdict or the judgment, is that an ambiguity or a conflict? The answer matters, because if a pronouncement is ambiguous, an appellate court may look beyond the pronouncement itself and harmonize it with both the verdict and the later-entered judgment. Aguilar v. State , 202 S.W.3d 840, 843 (Tex. App.-Waco 2006, pet. ref'd). If, on the other hand, a trial court leaves something out of an otherwise unambiguous pronouncement of sentence, an appellate court's role is less clear.
Two seemingly irreconcilable principles are at work here.
The first is that a defendant's sentence "must be pronounced orally in his presence." Taylor v. State , 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) (citing Tex. Code Crim. Proc. Ann. art. 42.03 § 1(a) (West Supp. 2016)). "The judgment, including the sentence assessed, is just the written declaration and embodiment of that oral pronouncement." Id. And a hierarchy exists: "When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." Id. Although this principle applies most clearly in the nonjury setting, to my knowledge no court has viewed oral sentencing in a jury trial as purely ministerial or redundant or superfluous when done immediately following the trial court's reading the verdict aloud and in the defendant's presence. Indeed, by law "sentencing" differs substantively both from "reading the verdict" and from "entering judgment." Here, though, the majority's disposition effectively means that a trial court need not ensure that the oral sentencing is accurate, a lenience that I find discomfiting.
*794 The competing principle is that if the oral sentencing itself is truly ambiguous, as opposed to explicitly conflicting with the verdict or judgment, "the jury's punishment verdict, the court's pronouncement, and the written judgment should all be read together in an effort to resolve the ambiguity." Aguilar , 202 S.W.3d at 843 ; see also Hawkins v. State , No. 02-15-00338-CR, 2016 WL 4474351, at *7-8 (Tex. App.-Fort Worth Aug. 25, 2016, pet. ref'd) (mem. op., not designated for publication); Kimble v. State , No. 02-15-00370-CR, 2016 WL 2840922, at *1 (Tex. App.-Fort Worth May 12, 2016, pet. ref'd) (mem. op., not designated for publication); Hernandez v. State , No. 02-12-00392-CR, 2014 WL 1510093, at *2-3 (Tex. App.-Fort Worth Apr. 17, 2014, no pet.) (mem. op., not designated for publication). We have observed, sensibly, that this court-created exception harmonizes the sacrosanct nature of oral pronouncements with otherwise-conflicting common law, statutes, and constitutional provisions that place valid jury verdicts on punishment beyond a trial judge's ability to alter. Kimble , 2016 WL 2840922, at *1. I would restrict that narrow exception to instances of demonstrable ambiguity.
Discussion
Although Ette's sentencing conflicted with both the verdict and the judgment, nothing about the trial court's oral pronouncement of sentence was ambiguous in and of itself. Each of these three components-verdict, judgment, and sentencing-plays a distinct legal role; none is to be ignored or given short shrift.
The verdict : Under article 37.01 of the code of criminal procedure, a "verdict" is "a written declaration by a jury of its decision of the issue submitted to it." Tex. Code Crim. Proc. Ann. art. 37.01 (West 2006). We have that here: the jury assessed Ette's punishment at ten years' confinement, sentence suspended, and a $10,000 fine, not suspended.
Article 37.04 requires a verdict to be "read aloud by the judge," and if it is "in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court." Id. art. 37.04 (West 2006). The trial court here complied with article 37.04 by reading the jury's verdict aloud.
The judgment : Later code provisions deal with the trial court's entry of judgment:
Sec. 1. A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant. The sentence served shall be based on the information contained in the judgment. The judgment shall reflect:
...
7. The verdict or verdicts of the jury or the finding or findings of the court;
8. In the event of a conviction that the defendant is adjudged guilty of the offense as found by the verdict of the jury or the finding of the court, and that the defendant be punished in accordance with the jury's verdict or the court's finding as to the proper punishment;
....
Id. art. 42.01, § 1(7), (8) (West Supp. 2016).
Caselaw reinforces the idea, inherent in the quoted provisions, that a trial court may not alter a valid jury verdict on punishment: a court has "no power to change a jury verdict unless it is with the jury's consent and before they have dispersed." Ex parte McIver , 586 S.W.2d 851, 854 (Tex. Crim. App. [Panel Op.] 1979) ; see also State v. Dudley , 223 S.W.3d 717, 721 (Tex. App.-Tyler 2007, no pet.) ("If a jury assesses a punishment authorized by the law, the trial court has no power to change that punishment verdict and has very little *795 authority to do anything other than to impose that sentence.").
Oral pronouncement of sentence : Between the trial court's receiving the verdict and entering judgment, an intermediate step occurs-the oral sentencing. "The sentence is that part of the judgment ... that orders that the punishment be carried into execution in the manner prescribed by law." Tex. Code Crim. Proc. Ann. art. 42.02 (West 2006). The pronouncement of sentence is also the appealable event; the written judgment simply memorializes and should comport with it. See Coffey v. State , 979 S.W.2d 326, 328 (Tex. Crim. App. 1998) ; Mapps v. State , No. 05-03-01039-CR, 2004 WL 1173401, at *1 n.2 (Tex. App.-Dallas May 27, 2004, no pet.) (not designated for publication); see also Tex. R. App. P. 26.2 (stating that deadline for perfecting criminal appeal runs from date of sentence or an appealable order, not from date of written judgment).
With some inapplicable exceptions, article 42.03 provides that "sentence shall be pronounced in the defendant's presence." Tex. Code Crim. Proc. Ann. art. 42.03, § 1(a). For good reason, fines (along with any other punishments) must be orally pronounced in the defendant's presence. Armstrong v. State , 340 S.W.3d 759, 767 (Tex. Crim. App. 2011) ; Taylor, 131 S.W.3d at 500. That is because "[f]ines are punitive" and are meant to be part of the convicted defendant's sentence; they fall under Chapter 12 of the Texas Penal Code, which is titled "Punishments." Armstrong , 340 S.W.3d at 767.
Broader principles are also at stake. For a trial court to orally pronounce one sentence to a defendant's face and then, outside the defendant's presence, sign a written judgment embodying a different and more severe sentence violates constitutional due process and fair notice. See Ex parte Madding , 70 S.W.3d 131, 136 (Tex. Crim. App. 2002). "A defendant has a due process 'legitimate expectation' that the sentence he heard orally pronounced in the courtroom is the same sentence that he will be required to serve." Id.
This is not to say that ambiguities cannot and do not arise. Aguilar , the case that began the "sentencing ambiguity" line of decisions, presented a clear instance of just such a problem. There, when pronouncing sentence on six counts on which the jury had assessed punishment, the trial court pronounced one sentence without specifically tying it to its associated count-that is, by neglecting to utter the simple phrase "count four."[1]
*796 Aguilar , 202 S.W.3d at 843. The Waco court held that that particular sentence was ambiguous and then resolved the ambiguity by explicitly tying it to the fourth count. Id. I agree that the sentence itself in Aguilar was ambiguous under the common understanding of that word[2] , and that the ambiguity could thus properly be resolved by looking at other portions of the record.
Another case of ambiguous sentencing is Hernandez , in which the trial court left out the jury-assessed fine. But unlike Ette's case, the prosecutor in Hernandez immediately prompted, "Judge, did you read his fine as well?" and the judge responded, "I did, $5,000." 2014 WL 1510093, at *3. We held that the judge's oral pronouncement was "potentially ambiguous," and because the fine appeared in both the verdict and the later judgment, we resolved "any potential ambiguity" in favor of including the fine. Id. Contextually and contemporaneously, the Hernandez prosecutor was asking whether the trial judge intended to include the fine in the sentence, and the judge answered affirmatively. As we analyzed it, the potential ambiguity arose not from any overt mismatch between verdict, sentence, and judgment, but rather from the oral pronouncement's having been so muddled.
The same can broadly be said about our decision in Hawkins , where the defendant's own disruptive conduct during sentencing rattled the trial court and led it to omit the fine. Hawkins , 2016 WL 4474351, at *4, 7-8. We agreed with the State that an ambiguous sentencing existed because "Hawkins interfered with the trial court's oral pronouncement of its judgment and that Hawkins should not benefit from his own invited error." Id. at *7. To me, though, Hawkins stands more accurately for principles of invited error than actual "ambiguity."
This court has faced the omitted-fine issue but one other time in a jury trial, although without the State's having jumped in to clarify the trial court's omission as in Hernandez , and without invited error as in Hawkins . In Kimble , we held that the sentence was ambiguous precisely-and only-because it failed to include the fine that was otherwise assessed, and we resolved what we labeled an "ambiguity" in favor of the sentence's including the fine. 2016 WL 2840922, at *2.
This label and its import are where I part ways with the Kimble panel and with the majority here.[3]
When the sentence omits a fine, there is neither a fine nor an ambiguity within the sentencing process about the fine's presence *797 or absence. When, though, as in Aguilar , Hernandez , and Hawkins , something about the sentencing process itself suggests an ambiguity for varying reasons, I agree that courts may look outside the pronouncement of sentence for resolution-but it is improper to do so in order to create ambiguity in the first place. Aguilar itself, upon which all the other cases rely, did not go that far.
Put differently, when the sentence fails to include a fine assessed by the jury, the sentence is inconsistent with the jury's verdict, but it is not for that reason ambiguous. Again, of course, a trial court may not vary the sentence from the verdict. See McIver , 586 S.W.2d at 854 ; Dudley , 223 S.W.3d at 721. But here the trial court did so anyway, and no one spoke up, as the prosecutor did in Hernandez . See Hernandez , 2014 WL 1510093, at *3 (holding that when judge failed to pronounce fine during sentencing, the prosecutor's questioning whether trial court intended to include the fine, along with other factors, was sufficient to resolve ambiguity).
It's true that the written judgment in Ette's case comports with the verdict, as it must. See Tex. Code Crim. Proc. art. 42.01, § 1(7), (8). Yet the judgment must also match the oral pronouncement of sentence, and if the two conflict, the court of criminal appeals has established that the oral pronouncement wins. See Taylor , 131 S.W.3d at 500.[4]
In the nonjury context, we routinely reform judgments to delete fines that were not orally pronounced at sentencing but that appeared in the judgment. E.g. , Bone v. State , No. 02-15-00452-CR, 2016 WL 7240603, at *1 (Tex. App.-Fort Worth Dec. 15, 2016, no pet.) (mem. op., not designated for publication); Creed v. State , No. 02-16-00046-CR, 2016 WL 4474360, at *2 (Tex. App.-Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication); Boone v. State , No. 02-15-00417-CR, 2016 WL 4040563, at *2 (Tex. App.-Fort Worth July 28, 2016, no pet.) (mem. op., not designated for publication). Indeed, in Bone the State submitted a letter to us agreeing without hesitation that the unpronounced fine should be deleted from the judgment. See Bone , 2016 WL 7240603, at *1. Is there a principled reason to construe the sentencing process differently in jury trials, when the statutes and rules draw no such distinction? I readily concede that sound policy might well dictate that we consider an omitted fine to be an implied term of an otherwise accurate oral sentencing-but that judicially created result needs to be described by a word other than "ambiguity."
In sum, whether the trial court here omitted the $10,000 fine at sentencing accidentally or under a mistaken belief that fines do not have to be orally pronounced-and I stress that we have no idea why the fine was left out-neither situation created an ambiguity in sentencing. The State could easily have sought immediate clarification; had it done so, the due-process concerns expressed in Madding would have been satisfied and, as in Hernandez , we could have properly construed the entirety of the sentencing proceedings to support the fine.
But under these facts, I cannot go along with mislabeling Ette's sentencing as ambiguous.
*798 I would sustain his second point and delete the $10,000 fine, and because the majority does not, I respectfully dissent.

The trial judge's entire pronouncement of sentence was as follows:
Aurelio Hernandez Aguilar, the jury having found you guilty, the Court finds you guilty and assesses your punishment therefor at confinement in the Institutional Division of the Texas Department of Criminal Justice on Count 1 for a term of 45 years. Count 2, you are sentenced to a period of 10 years in the Institutional Division of the Texas Department of Corrections [sic]. Count 3, it's the sentence of the Court that you be confined in the Institutional Division of the Texas Department of Criminal Justice for a period of 10 years. It is also the sentence of the Court, the jury having found you guilty and assessed your punishment, sentences you to confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of 10 years. Count 5, the jury having found you guilty and assess[ed] your punishment in the Institutional Division of the Texas Department of Criminal Justice for a period of 10 years, sentences you to a period of 10 years. Count 6, the jury having found you guilty and assessed your punishment on Count 6 at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 15 years, the Court sentences you to a term of 15 years.
I'm going to grant the State's motion to have the sentences run consecutively. In other words, they will be accumulating, and they will be stacked to the extent permissible by law.
Id.

In the civil context, this court has recently reiterated the standard test for ambiguity when it comes to such things as contracts: "If the contracts are so worded that they can be given a certain or definite legal meaning or interpretation, then they are not ambiguous, and the court will construe them as a matter of law.... Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; .... We are not permitted to rewrite an agreement to mean something it did not." Rubinstein v. Lucchese, Inc. , 497 S.W.3d 615, 625 (Tex. App.-Fort Worth 2016, no pet.). In my view, these principles logically apply if the words "contract" and "agreement" are replaced with "sentencing."

Because Kimble is an unpublished opinion, it has no precedential value. See Tex. R. App. P. 47.7(a). Two of our sister courts, relying on Aguilar , have also applied the ambiguity construct to a flat-out omission, but because I find Aguilar distinguishable, I respectfully disagree with those courts. Cazares v. State , No. 05-15-00231-CR, 2016 WL 3144274, at *1-2 (Tex. App.-Dallas June 6, 2016, no pet.) (mem. op., not designated for publication); Neal v. State , No. 08-07-00232-CR, 2010 WL 160206, at *9-10 (Tex. App.-El Paso Jan. 13, 2010, pet. ref'd) (not designated for publication).

I am not persuaded by the majority's citation to Milczanowski v. State , 645 S.W.2d 445, 447 (Tex. Crim. App. 1983) (stating that in jury cases, "the written verdict provides the basis for reforming an erroneous recitation in judgment and sentence"). The quoted language merely drew a comparison between jury cases and the one there involved, which was a bench trial in which the trial court's judgment and sentence varied from the language of the charged offense. Milczanowski was not an ambiguity situation, nor did it involve a jury verdict, and so for me, its holding sheds no light here.